## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SHAWN HOUSLEY                                     CIVIL ACTION

VERSUS                                            NO. 09-4358

ROBERT C. TANNER, WARDEN                          SECTION "S" (6)

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

# I.  PROCEDURAL HISTORY[1]

Petitioner, Shawn Housley, presently incarcerated in Rayburn Correctional Center, was charged in a bill of information on July 22, 2003, with two counts of distribution of cocaine in violation of LSA-R.S. 40:967(A)(1).  He pled not guilty and filed several pretrial motions.  He proceeded to trial on October 25, 2004.  After a two day jury trial in the Fortieth Judicial District for the Parish of St. John the Baptist, petitioner was found guilty of attempted distribution of cocaine, a lesser included offense, on each of the two counts.  Thereafter the state filed a multiple offender bill of information alleging petitioner to be a third felony offender based on prior convictions for possession with intent to distribute marijuana and attempted distribution of cocaine.  After a multiple bill hearing, the trial court found petitioner to be a third felony offender and sentenced him to twenty-two years imprisonment on each count.

The Louisiana Fifth Circuit Court of Appeal, on January 31, 2006, affirmed petitioner's convictions and sentences.  *State v. Housley*, 922 So.2d 659 (La. App. 5 Cir. 2006).  On November 17, 2006, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his convictions and sentences final.  *State v. Housley*, 942 So.2d 531 (La. 2006).

---

[1]A portion of the procedural history was taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Housley,* 922 So.2d 659 (La. App. 5 Cir. 2006).

Following the conclusion of his direct appeal proceedings, petitioner sought post-conviction relief.  Petitioner's effort in this regard culminated on May 29, 2009, when the Louisiana Supreme Court denied his writ application.  *State ex rel. Housely* [sic] *v. State*, 9 So.3d 159 (La. 2009).

On July 1, 2009, petitioner filed the instant petition for writ of habeas corpus raising the following claims:  1) The trial court erred in overruling the defense's objections to improper questioning by the prosecutor during voir dire; 2) the trial court erred in denying the defense's motion for a mistrial based upon the prosecutor's improper voir dire questioning; 3) the trial court erred in admitting into evidence, over defense counsel's objection, videotapes of the alleged drug transactions; 4) the trial court erred in finding probable cause without providing petitioner with an opportunity to fully litigate the issue; 5) he received ineffective assistance of counsel due to counsel's failure to present an entrapment defense; and 6) he received ineffective assistance of counsel due to counsel's failure to appeal the denial of his motion to suppress.  The State acknowledges that petitioner has exhausted the above claims as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), and that the instant action is timely.  (Rec. doc. 11, pp. 2 and 3).  Accordingly, this court shall review the pertinent facts and standard of review, then proceed to address the merits of petitioner's claims.

## II.  FACTS[2]

On February 23, 2003, Officers B.J. Rock and Hayes Caddou were working undercover for St. John the Baptist Sheriff's Office in an attempt to purchase illegal drugs from street level dealers.  They were in a vehicle equipped with video surveillance cameras when they came in contact with two black males, one of whom was defendant, in a small compact car on Dove Street.  Agent Caddou, who was driving, asked the occupants for "40 hard," which is street slang for crack cocaine.  The occupants did not respond.  As Agent Caddou began to drive off, the passenger, petitioner, nodded his head indicating he had the crack cocaine.  Agent Caddou drove around the block and sat in a park area for awhile.  After no one showed up, Agents Caddou and Rock, who was the passenger, left and went to the Mini Hui Mart store.

Agent Rock entered the store and purchased beer.  While Agent Rock was in the store, petitioner pulled into the parking lot of the store.  Petitioner made contact with Agent Caddou, who was sitting in his vehicle, and indicated for him to go inside the store. Agent Caddou went inside the store at which time the drug transaction occurred. Petitioner placed the crack cocaine on top of a beer box and Agent Caddou put forty dollars inside a cooler and walked out of the store with the cocaine.

---

[2]The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion on direct appeal, *State v. Housley*, 922 So.2d 659 (La. App. 5 Cir. 2006).

Approximately one month later, on March 21, 2003, Agent Caddou again purchased crack cocaine from defendant at the Mini Hui Mart.  On that date, Agents Caddou and Rock were again working undercover and went to the Mini Hui Mart.  This time, Agent Rock wore a body camera.  Agent Rock entered the store and made contact with petitioner. Petitioner asked for Agent Caddou so Agent Rock returned to his truck while Agent Caddou went inside the store.  Once inside, Agent Caddou asked petitioner for "40 hard."  Petitioner put the crack cocaine on a Busch beer can and Agent Caddou placed forty dollars inside the cooler.

Petitioner was identified as the perpetrator by Sergeant Nolan Anderson with the St. John the Baptist Sheriff's Office who reviewed the videotape from the February 23, 2003 transaction and recognized petitioner on the tape. Also, both Agents Caddou and Rock identified petitioner in court as the person with whom the drug transactions occurred.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### Claims 1) and 2): Trial Court Erred in Denying Objection and Overruling Mistrial Based Upon Prosecutor's Improper Voir Dire Questioning

Petitioner argues that the trial court erred in denying his objection and overruling his motion for a mistrial when the prosecutor improperly argued the actual facts of the case to prospective jurors during voir dire.  According to petitioner, the prosecutor's questioning during voir dire impermissibly sought a commitment of how the prospective jurors would vote in light of the actual facts of the case.

Improper jury argument by the State does not present a claim of constitutional magnitude warranting federal habeas corpus relief unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment.  *Jones v. Butler,* 864 F.2d 348, 356 (5th Cir.1988).  Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v.. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Bell v. Lynaugh,* 828 F.2d 1085, 1095 (5th Cir.1987).  In the context of voir dire, the law leaves the scope and the conduct of voir dire to the sound discretion of the trial court.  *Turner v. Murray,* 476 U.S. 28, 38 n. 12, 106 S.Ct. 1683, 1689 n. 12, 90 L.Ed.2d 27 (1986).  Only under extraordinary circumstances does the scope of voir dire have constitutional implications.

7

*Rosales-Lopez v. U.S.,* 451 U.S. 182, 188-190, 101 S.Ct. 1629, 1634-1635, 68 L.Ed.2d 22

(1981).

In addressing the instant claims in connection with petitioner's direct appeal,

the Louisiana Fifth Circuit reviewed the pertinent facts giving rise to petitioner's claims.

Defendant's objection came during the prosecutor's voir dire examination of the second jury panel.  The prosecutor began his voir dire by explaining the case involved the purchase of drugs through an undercover operation.  He reviewed the defendant's presumption of innocence and the state's burden of proof.  The prosecutor then questioned the prospective jurors about evidence and the credibility of police officers.  Specifically, the following dialogue occurred:

MR. BECNEL:

* * *

Now, let's get to the testimony and the evidence.  The evidence is going to come not from what I say or what Mr. Lillian says, not from what Judge Snowdy says.  The evidence is going to come from sworn testimony, according to court rules, by the witnesses, by police officers, by scientists from the Louisiana State Police Lab, by the actual cocaine that was allegedly sold to an undercover agent.  That's going to be the evidence.

The mere fact that a person is a police officer or wears a police uniform doesn't give them any corner on the truth.  They will testify and their testimony should be heard just like anybody in this courtroom.  Do all of you agree that you will listen to the testimony of a police officer just like anybody else, not giving it anymore weight or any less weight?  But you will determine whether it's credible, whether it makes sense, and whether it's believable.  Do you agree with that?

(AFFIRMATIVE VERBAL RESPONSE BY PANEL.)

8

* * *

Would any of you hold it against the Sheriff's Office, St. John the Baptist Parish, Wayne Jones, and the District Attorney's Office for conducting an undercover operation; that is, to go with a-not uniformed police officer, in plain clothes, to go out into the street to try and find out where the drugs are and to make drug buys. Do any of you hold that against the Sheriff's Office for conducting that type of operation?

(NEGATIVE VERBAL RESPONSE.)

Do any of you think it's unfair that they shouldn't do that?

(NEGATIVE VERBAL RESPONSE.)

Now, during the course of this case, you're going to hear the testimony of the police officers who actually made the buy from this defendant on two occasions. And you are going to hear and see certain video and audio, either through a camera on a car or a body camera. However, what I'm going to ask is: regardless of how good or how bad the video is, when you hear the testimony of these police officers in corroboration with the video, can you convict an individual based on the testimony of the police officers if all of the video is not there?

At this point, defense counsel objected on the basis the prosecutor was arguing the specific facts of the case. The trial judge overruled the objection stating it was a salient question given the vagueness of videos in some cases. The prosecutor proceeded to ask each prospective juror, "[c]an you convict an individual based on the testimony of an undercover police officer who made the purchase and can identify the defendant?"

One prospective juror asked the prosecutor for more details. The prosecutor responded by explaining the video would not be like a movie and the prospective juror audibly concluded there would be some ambiguity in the video. Defense counsel again objected and the trial judge instructed the prosecutor not to elaborate. The prospective juror ultimately indicated he might need the video in addition to the testimony of the officer before he could convict.

The prosecutor concluded his voir dire examination by asking each of

9

the prospective jurors to "listen to all the evidence, and do not prejudge the case until the end." Defense counsel then conducted his own voir dire examination. During the bench conference for challenges, defense counsel moved for a mistrial on the basis the prosecutor improperly asked the prospective jurors for a prejudgment of the facts of the case.  The trial judge denied the motion for a mistrial finding the prosecutor did not cross the threshold.

*Housley*, 922 So.2d at 662-663.

The state appellate court concluded, based upon its examination of the above facts, that "the prosecutor's examination was permissible in order to ascertain the prospective jurors' attitudes towards the testimony of an eyewitness police officer."  *Id*. at 663.  Further, the court concluded "that the questioning by the prosecutor did not seek a promise or commitment regarding the verdict.  The prosecutor inquired whether the prospective jurors 'could' convict based on certain circumstances, not that they 'would' convict."  *Id*.

This court finds that the above determination on the part of the Louisiana Fifth Circuit Court of Appeal does not represent an unreasonable application of Supreme Court law to the facts of this case.  The prosecutor's questioning of prospective jurors did not render petitioner's trial fundamentally unfair and, as such, was not violative of due process.

### Claim 3):  Trial Court Erred in Improperly Admitting Videotapes of Drug Transactions

Petitioner argues that the trial court erred by admitting into evidence videotapes of the pertinent drug transactions.  Petitioner asserts that the videotapes should have been excluded because they were not disclosed prior to trial despite his discovery motion seeking

10

such tapes.  Petitioner also argues that the videotapes should have been excluded because the police officer who wore the recording device was not present in court to identify or authenticate the videotapes.

In addressing this claim in connection with petitioner's direct appeal, the Louisiana Fifth Circuit first reviewed the applicable facts.

> Prior to trial, on August 12, 2003, defendant filed a motion for discovery in which he requested all video and audio tapes.  The state answered defendant's discovery on September 4, 2003, and specifically stated there were no video or audio tapes.  On July 2, 2004, defendant filed a motion for additional discovery of an audiotape.  The parties appeared in court on July 12, 2004, at which time defense counsel questioned the state about audiotapes.  There is no transcript of this exchange but only a minute entry that states, "STATE SAYS THERE IS NO AUDIO TAPE, ONLY THE VIDEO TAPE." A little over three months later, defendant went to trial.

> On the first day of trial, a jury was selected and Agent B.J. Rock testified for the state.  During his testimony, Agent Rock stated the vehicle in which he was riding was equipped with a video camera.  He also stated that during the second drug transaction on March 21, 2003, he wore a body camera.  At the conclusion of Agent Rock's testimony, Agent Rock was released from his subpoena due to other commitments.  The state then indicated its intent to call Detective Troy Hidalgo and to play a video.  There was no objection by defense counsel.  Before Detective Hidalgo was called, the trial judge recessed trial for the night.

> Prior to the first witness on the second day of trial, defense counsel objected to the videotape that the state intended to show.  Defense counsel indicated he had not seen the videotape that was taken with the body camera worn by Agent Rock.  He objected to the admissibility of the videotape on the basis Agent Rock was not available to identify or authenticate the tape. Defense counsel admitted he was at fault for agreeing to a recess on the first day of trial knowing that Agent Rock would not be available to testify the next day.  At no time did defense counsel object to the admissibility of the videotape on the basis of delayed disclosure.  Noting that Detective Hidalgo could

> possibly establish his involvement/connection with the videotape, the trial judge
> overruled defendant's objection to its admissibility.  Defendant again objected
> to the videotape when it was played for the jury during Detective Hidalgo's
> testimony.

*Housley,* 922 So.2d at 664.

With regard to petitioner's claim that the videotapes should have been excluded because they were not disclosed prior to trial, the state appellate court noted that petitioner failed to object to the admissibility of the videotapes at trial based upon delayed disclosure. Thereafter, the court observed:

> To preserve the right to seek appellate review, a party must state an objection
> contemporaneously with the occurrence of the alleged error as well as the
> grounds for that objection.  LSA-C.Cr.P. art. 841.  A new ground for an
> objection cannot be presented for the first time on appeal.  *State v. Gaal,* 01-376
> (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949-950, *writ denied,* 02-2335
> (La.10/3/03), 855 So.2d 294.  Therefore, defendant's argument is not properly
> before this court for review.

*Housley*, 922 So.2d at 664-665.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).  This "independent and adequate

12

state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In the instant situation, the Louisiana Fifth Circuit issued the last reasoned decision, clearly declining, based on the procedural ground that petitioner failed to lodge a

contemporaneous objection, to review petitioner's claim that the videotapes should not have been admitted because they were not disclosed prior to trial. It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). When the state court relies on this procedural default in dismissing the claim, as it did here, the claim is immune from federal review. *Id.*

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, petitioner provides no basis to support a finding that he had good cause for failing to raise an objection to the admission of the videotapes at trial based upon

14

their delayed disclosure.  "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the

15

petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F .3d at 903.

Petitioner does not present and the record does not contain evidence that suggests his actual innocence. Accordingly, petitioner has failed to overcome the procedural bar to his claim that the trial court erred in admitting the videotapes into evidence because they were not disclosed prior to trial.

Petitioner also contends that the trial court erred in admitting the videotapes into evidence because Agent Rock, who wore the recording device, was not available to authenticate the videotapes. In addressing the instant claim in connection with petitioner's direct appeal, the Louisiana Fifth Circuit provided:

> Detective Troy Hidalgo testified he was in charge of the video surveillance in the present undercover operation. He stated he installed and retrieved the videotapes used in the surveillance equipment during the February 25th and March 21st drug buys. He also stated he hooked up the body camera to Agent Rock. Detective Hidalgo testified he brought the videotapes from both drug transactions to court that day at which time three videotapes were played for the jury. Based on this testimony, we find that the videotapes were properly authenticated as being the videotapes of the events surrounding the drug transactions on February 25, 2003 and March 21, 2003, in which defendant was involved. Thus, the trial court properly admitted the videotapes into evidence, and this assigned error is likewise without merit.

*Housley,* 922 So.2d at 665.

It is well established that federal habeas review is limited to questions of constitutional dimension. *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.

1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).   In reviewing a state court evidentiary determination, such as the admission of the videotapes of the pertinent drug transactions, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" *Andrade v. McCotter* 805 F.2d 1190, 1193 (5th Cir. 1986), *quoting Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985).

Clearly, in this instant matter, petitioner's right to fundamental fairness was not violated by virtue of the admission of the videotapes.   As the state appellate court observed, the tapes were properly authenticated by Detective Hidalgo as being the videotapes of the drug transactions in which petitioner was involved.   Accordingly, petitioner's claim for habeas relief is without merit.

### Claim 4): Trial Court Erred in Finding Probable Cause Without Providing Petitioner with an Opportunity to Fully Litigate the Issue

Petitioner complains that shortly after his arrest and plea of not guilty, the judge made a probable cause determination without providing him with proper notice.   As such, petitioner asserts that he was unconstitutionally prevented from subpoenaing witnesses to testify on his behalf.

A review of the State record provides no evidence to support petitioner's claim

that a probable cause hearing was conducted shortly after his arrest.  No such hearing was

required because a warrant was issued for petitioner's arrest.[3]  Instead, defense counsel filed

on August 12, 2003, a motion for a preliminary examination to determine whether there was

probable cause to support petitioner's arrest.[4]  Pursuant to defense counsel's motion, a

preliminary examination was conducted on September 17, 2003, following which the trial

court determined there was probable cause for petitioner's arrest.[5]

Based upon the above facts, it is clear that contrary to petitioner's assertion, he

was not deprived of notice of his probable cause hearing nor was he denied the opportunity

to call defense witnesses.  Accordingly, the instant claim for habeas corpus relief is without

merit.

### Claims 5) and 6):  Counsel Was Ineffective in Failing to Present Entrapment Defense and Failing to Appeal Denial of Motion to Suppress

The seminal Supreme Court decision regarding ineffective assistance of counsel

is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984),

wherein the Court held that in order to prove that counsel was unconstitutionally ineffective,

---

[3]A copy of petitioner's arrest warrant is contained in the State rec., vol. 1 of 2, p. 27.  Under the provisions of La.C.Cr.P. art. 230.2, a probable cause determination must be made within forty-eight hours of a person's arrest only if said arrest is effected without a warrant.

[4]A copy of defense counsel's motion for preliminary examination is contained in the State rec., vol. 1 of 2, p. 4.

[5]The transcript of petitioner's September 17, 2003 preliminary examination hearing is contained in the State rec., vol. 1 of 2, pp. 93-103.

petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner claims that he received "inept" assistance of counsel due to counsel's failure "to present an entrapment defense to establish the defendant was not predisposed to distribute cocaine."  (Rec. doc. 3, p. 13).

The court finds the above claim is insufficient for the purpose of attaining habeas relief because petitioner has failed to show how he was prejudiced.  The success of such a defense is doubtful given that petitioner had previous drug convictions.  In fact, petitioner had only recently been released from imprisonment in connection with his February, 2002 attempted distribution of cocaine conviction when he was arrested in

connection with the drug charges for which he is currently imprisoned.  *See State v. Housley*, 884 So.2d 1204 (La. App. 5 Cir. 2004).

Petitioner also asserts that counsel was ineffective in failing to appeal the denial of his motion to suppress.[6]  With regard to said claim, the court notes that petitioner must satisfy the same two-prong test enunciated in *Strickland*, *supra*, that counsel's performance was deficient and that the deficient performance prejudiced the defense, in connection with any ineffectiveness claim against appellate counsel.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted*)* ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

A review of the trial transcript reflects that to the extent the videotapes may have been unclear regarding whether or not petitioner had exchanged drugs for money, the testimony of the law enforcement official who participated in the drug transactions was not. Specifically, Officer Hayes Caddou testified that on two occasions, February 25, 2003, and March 21, 2003, he met petitioner in the Mini Hui Mart, saw petitioner place crack cocaine on top of a Busch beer box and, in exchange for the crack cocaine, Caddou placed $40 in the

---

[6]As the State notes in its opposition memorandum (rec. doc. 12, p. 8), no motion to suppress was filed in petitioner's case and, as such, there was no denial of said motion for appellate counsel to appeal.  However, a reading of petitioner's argument indicates, though it is far from clear, that petitioner is complaining that appellate counsel should have argued on appeal that the videotapes should have been suppressed because they failed to show the alleged drug transactions. Accordingly, the court shall address this argument.

store cooler.[7]

Based upon the above, the court finds that petitioner has failed to make the requisite prejudice showing for the purpose of proving that appellate counsel was ineffective for failing to argue on appeal that the videotapes should have been suppressed because they failed to reflect the actual drug transactions.  Even without the videotapes, there was undisputed testimony that the drug transactions had taken place and that petitioner was a participant in the drug transactions.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Shawn Housley, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United*

---

[7]*See* State rec., vol. 1 of 2, pp. 376-377 and 378-379.

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[8]

New Orleans, Louisiana, this __27th__ day of _____October_____, 2010.

LOUIS MOORE, JR.

United States Magistrate Judge

---

[8]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.